BELL, Plaintiff-Appellee, v. VARDALIDES, et, Defendant-Appellants.

Ohio Appeals, Second District, Montgomery County.

No. 1770. Decided February 22, 1944.

Webb Clark, Dayton, for Plaintiff-Appellee.

Walter Connors, Dayton, Harry Solimano, Dayton, for Defendant-Appellants.

## OPINION

By GEIGER, J.

This matter is before this court on appeal on questions of law and fact from a decision of the Court of Common Pleas of Montgomery County, Ohio.

Plaintiff, in his second amended petition, says that he was the owner of a certain lot in the city of Dayton, Ohio,

and owed a mortgage on said property to The Security Savings Association; that he defaulted on his mortgage contract, and on the 26th day of June, 1933, said Savings Association foreclosed and acquired title to said lot on the 3rd day of February, 1936, at a sheriff's sale; that on the 27th day of January, 1937, plaintiff entered into an oral agreement with defendants, Xenia N. Vardalides and Nick Z. Vardalides that they purchase in their names the said property for and on behalf of the plaintiff, and upon said oral agreement to hold the same in their names until such time as the plaintiff repaid the defendants for any money advanced and until plantiff could settle a certain deficiency judgment.

It is alleged that it was agreed between the plaintiff and the defendants that the defendants would secure a deed for the property from the Savings Association and would assume and agree to pay taxes and execute a mortgage to the Savings Association in the sum of $3300.00 payable in installments; that under this agreement plaintiff paid $200.00 on the purchase price and the defendants, upon his request, advanced the sum of $400.00 as a further part of the purchase price, and in addition executed a mortgage to the Security Savings Association for $3300.00; that the deed was executed by The Security Savings Association to Xenia N. Vardalides, to be held by her for the plaintiff until a deficiency judgment to the Association in the amount of $7888.29 could be liquidated, and said defendants reimbursed for money paid by them on said property, after which said Xenia N. Vardalides and Nick Z. Vardalides, under the oral agreement, were to execute to the plaintiff a deed for the property; that relying upon the oral agreement, plaintiff reimbursed the defendants to the amount of $400.00 and made the payments due on the mortgage and lived in said property and kept the same repaired, expending therefor $411.92; that relying upon said oral agreement, plaintiff settled the deficiency judgment and made demand of the defendants, Xenia and Nick, for a deed to the lot; at the same time agreeing to give a new note and mortgage and have the note and mortgage against the defendants satisfied. It is alleged defendants refused to execute a deed.

Plantiff alleged that the Security Savings Association has a mortgage, and asks for a reformation of the deed from The Security Savings Association to Xenia N. Vardalides and that an injunction be issued against her and her husband, Nick, compelling them to execute a deed of conveyance to the plaintiff.

The defendants, Xenia and Nick Vardalides, answer denying each and every allegation of the petition.

A reply filed by the plaintiff has been misplaced.

On October 31, 1941, the court filed its decision, making certain findings in reference to said action and concluding that the court will order that Xenia and Nick Vardalides cause the cancellation of a mortgage to one Vasilios D. Economou and deliver to the plaintiff a deed for said lot, free of all incumbrances, excepting the mortgage to The Security Savings Association.

On January 5, 1942, a finding entry was filed in the Common Pleas Court substantially as follows:

"Whereof the court finds on the issues joined for the plaintiff; that a trust agreement existed between Xenia N. Vardalides and Nick Z. Vardalides, under which said defendants were to purchase and hold the deed for the plaintiff, George Bell; that the defendant, Nick Z. Vardalides did purchase for George Bell in the name of Xenia N. Vardalides, the said real estate; that plaintiff furnished $200.00 and the defendant, Nick Z. Vardalides $600.00 of the purchase price of said real estate; that the plaintiff was to and has repaid the defendant, Nick Z. Vardalides, the $600.00 advanced by the said defendant on the purchase price by reason of a set off on a certain judgment owing the plaintiff, George Bell, from the defendant, Nick Z. Vardalides, in the principal amount of $1915.00; that the plaintiff, George Bell, improved said real estate in the amount of $411.92 subsequently to January 27, 1937, the date of the transfer of the property from the Security Savings Association to Xenia N. Vardalides; that the defendant Xenia N. Vardalides and Nick Z. Vardalides, did after suit was filed by plaintiff and summons served upon the defendants, attempt to incumber the lot by a mortgage to Vasilios D. Economou, to all of which defendants, by counsel excepts."

On January 5, 1942, the motion for a new trial was filed and overruled on January 28, 1942.

On January 13, 1943, the following entry was made:

"This cause came on to be heard on the motion of the defendants, Xenia N. Vardalides and Nick Z. Vardalides, to set aside the finding of the court heretofore made and to grant them a new trial as set forth in paragraphs one to seven inclusive. The court, upon consideration of said motion, does hereby overrule the same."

On January 15, 1943, there was filed an application for further hearing upon the motion for a new trial. This so-called application takes more the form of a brief of the defendants, and recites, in substance, that the defendants have taken the position in their motion for a new trial, that the plaintiff was not entitled to any relief for reasons stated, and it was further stated that for the last six months one of the defendants' attorneys had asked the court to allow him to present one witness, by whom an affidavit would be filed that George Bell when he settled his deficiency judgment of $7888.29 for $50.00, claimed to own no property at all. It is asserted in the application that this is a crooked transaction; that one of the attorneys for the defendants was promised by the court on several occasions that this cause would not be decided until such attorney was given the opportunity to present the Building Association record, it being asserted that said promise was known by the court and all the attorneys, but was not made a part of the record, and that as a matter of justice, the attorneys for defendants ask, that although a decision has been made on a motion for a new trial, the defendant, before an entry to this effect is filed, be given the right to introduce the said affidavit.

On January 27, 1943, the court made the following entry in substance:

"It is therefore considered, ordered and adjudged that the said Xenia N. Vardalides, defendant herein, holds the deed to the lot in trust for the plaintiff, George Bell, and it is ordered that said Xenia N. Vardalides deliver to George Bell a deed to said property free from all incumbrances, excepting the mortgage to The Security Savings Association and any accrued taxes; that George Bell at the time of the delivery of said deed aforesaid, shall satisfy the mortgage to the Security Savings Association now owing by Xenia N. Vardalides and Nick Z. Vardalides. It is further ordered that said Xenia 'N. Vardalides and Nick Z. Vardalides shall cause the cancellation of the mortgage executed by them to said Vasilios D. Economou on or about August 10, 1940, and recorded June 10, 1941, etc."

On February 16, 1943, a notice of appeal was filed, as follows:

"The defendants appellant hereby give notice of appeal in the Court of Appeals from the judgment rendered by the Court of Common Pleas in the above entitled cause on the

27th day or January, 1943. Said appeal is on questions of law and fact."

We discover no agreement between the parties on file consenting that the case may be heard on the evidence taken in the court below. Such an agreement may have been made but no record thereof is discovered. If no such agreement was in fact made, we cannot consider the evidence. However, in this case we will assume that there was an agreement between the parties and that we may therefore give consideration to the matter presented by the Bill of Exceptions. On November 16th and 17th, 1943, this Court heard testimony chiefly directed to the point as to whether or not the plaintiff-appellant had made a false statement in an affidavit filed by him with The Security Savings Association. Much time was spent in the discussion of the question as to whether the purported manifold copy of the statement of the plaintiff was admissible. We conclude that it is of little consequence whether it was admitted or not as it has no important bearing upon the question at hand, but admit the copy as the best evidence obtainable, for what it may be worth.

Defendant-appellants file an assignment of errors stating seven different allegations thereof most of which relate to the weight of the evidence, the admission and rejection of testimony and the overruling of the motion to dismiss defendant, Xenia N. Vardalides, at the conclusion of the plaintiff's testimony, same being renewed at the conclusion of all the testimony. The one assignment most relied upon is No. 5:

"Plaintiff-appellee has come into a Court of Equity without clean hands and asking for equitable relief and receiving the same."

The facts that lead to the controversy between the parties give rise to certain conflicting testimony but we may conclude that Bell, the plaintiff-appellee, was unable to contract with the Building and Loan Association for the purchase by him of the lot in question. Bell endeavored to negotiate through attorneys for the Building and Loan Association for the repurchase of the lot but received the information that the association refused to transact business with him by reason of former actions upon the part of Bell objected to by the association. During the course of negotiation, it was agreed that the lot would be sold by the association for $4100.00. Thereupon Bell entered into an oral contract with Nick Z.

Vardalides by which it is claimed that Nick was to purchase the lot, advancing the cash necessary and securing the balance, $3300.00, by a mortgage to the building and loan association, the cash to be advanced being $800.00, Nick to advance $600.00 of this and Bell claims to have advanced $200.00. Bell had secured a judgment against Nick for some $1900.00 and after Nick had made the advancement of the $600.00 of the cash necessary for the purchase, Bell gave him credit on the judgment of the $600.00 advanced by Nick. Bell never repaid any of this money to Nick except by credit on the judgment. By reason of the fact that Nick himself is involved in a number of financial difficulties it was agreed that the property should be purchased in the name of his wife, Xenia, and so held by her pending the time when Bell should discharge his obligation to Nick and give to the building and loan association his own mortgage in payment of that given by Nick and his wife. Bell was to remain in the background. The claim of Bell is that Nick and his wife purchased the property under the verbal agreement that it was ultimately to be conveyed by Xenia to Bell when he had relieved the Vardalides from any obligation to the building and loan association and had repaid to them the cash advanced. Bell claims that after the deeding of the property he, Bell, occupied the same and expended $411.00 for improvements thereon. There is considerable conflict in the testimony offered by the witnesses. Bell testifies positively to the agreement that the property should be taken in the name of Xenia and reconveyed to him. This statement is supported to some extent by the testimony of Nick and others who negotiated for the sale of the real estate by the building and loan association. On the other hand both Nick and his wife positively assert that there was no agreement to return the property to Bell, that they bought the property for themselves putting up their own money and giving their own obligation to the building and loan association. The testimony of the parties being so directly in contradiction, we must examine the circumstances in order to determine if possible wherein the truth lies. Bell and Nick had been in business together but Nick had not paid Bell that which Bell claimed was due to him and Bell secured a judgment against Nick for some $1900.00. They, however, were friendly during the alleged contract, whatever the feeling that may have arisen between them as matters progressed. Bell owed the building and loan association a large sum of money as a deficiency judgment, the same amounting to over $7000.00. Bell after Mrs. Vardalides bought the property made the

affidavit that he had no property and no interest in the real estate and succeeded in compromising this large judgment for the sum of $50.00. This is the transaction asserted by the defendant-appellants to have been such an act upon the part of Bell as to require a court of equity to deny him the relief sought. It is apparent that Bell by concealing from the building and loan association the interest he may have intended to secure in the lot, after he had been released from the deficiency judgment, furnished motive enough for him to enter into the agreement by which his interest in the property would be concealed from his creditors. However, we are not of the opinion that this effort upon Bell's part to deceive the building and loan association was so interwoven with the action now brought, to require the defendants-appellants to transfer the property to him, as to exclude him from the consideration of a court of equity if he has a meritorious claim that the transactions between the two parties resulted in a trust which a court of equity should enforce. While there are many cases touching upon what would result in an enforceable trust we have been unable to find any more nearly meeting the issues developed by the testimony than that of **Watson v Erb, 33 Oh St 35,** where an action was brought to enforce a resulting trust. The question was presented as to whether or not the statute of frauds would bar the relief sought. The court says in reference to the case there before it:

"It is an **action on the contract** to acquire lands. Our statute of frauds prohibits **an action on such a verbal contract.**"

Cases are quoted to the effect that **the trust must attach, if at all, at the time of the conveyance,** for it is the money which has gone to the vendor as the inducement of the title with which he parts that creates the equity in favor of him who advances it. The court states on page 50.

"We think it safe to say that in all such cases, something more must appear than the mere breach of such parol agreement and the damage consequent on such breach. The facts disclosed should make it clear and convincing, that by the breach of such contract the party has acquired an unconscionable advantage, or that the parol agreement has been employed to deprive the other party of his property."

The court concludes,

"In the case before us, as has been said, the only breach of the verbal contract consists in refusing to convey land bought with his own money. * * yet it is but the repudiation of a parol contract, which has misled no one to his injury, nor defrauded any one out of his money or property."

Looking at the matter as a whole, Bell being in a depleted financial situation, but desiring to repurchase the property which he had formerly owned and also to settle the deficiency judgment, entered into a verbal contract with the Vardalides to have them assume the entire burden of a transaction which was to result to his advantage provided he could do the things that he had in contemplation. On the other hand the Vardalides bore the brunt of the whole transaction except for the advancement of the $200.00 concerning which there is some dispute. We are unable to see that the verbal contract alleged to have been made **resulted in a trust in favor of Bell** by which the defendants could be compelled to surrender to him the property that they had purchased and paid for. While the statute of fraud has not been raised by answer, yet the question is saved by demurrer to second amended petition directly raising the question of statute of frauds. Demurrer was overruled.

"No action shall be brought to charge the defendant upon any contract concerning lands unless the agreement or some memorandum thereof shall be in writing. This statute operates in equity as well as at law."

See **33 Oh St, 35, supra.**

Another case of interest is that of Turpie v Larkin Lowe, et al., 4 O. C. C. 599. Many other cases could be cited to the same effect but the opinion is already too lengthy.

Judgement of the court below reversed.

(BARNES, P. J. concurs)

HORNBECK, J., dissents from the judgment for defendant, but concedes that the decree of the Common Pleas Court must be modified to require cancellation of the mortgage, Vardalides to the Security Savings Association, so that any personal liability of the Vardalides to the Security Savings Association will be removed.